

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN -6 I A 8: 29
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

TYRONNE HESTER                                         CIVIL ACTION

VERSUS                                                 NO: 05-1446-KDE-SS

JO ANNE BARNHART, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Plaintiff, Tyronne Hester ("Hester"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On September 15, 2003, Hester submitted an application for SSI benefits, R. 39-41, contending that he became disabled on April 1, 2001. R. 39. He reported that he suffered from a bulging disc in his lower back that caused numbness and pain. R. 43. On October 20, 2003, the Commissioner denied Hester's application for benefits. R. 23–26. He requested a hearing before an Administrative Law Judge ("ALJ"). R. 27. On May 25, 2004, there was hearing before an ALJ.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep____
___ Doc. No.____

R. 142-59. At the hearing the date on which Hester's alleged disability began was amended to July 29, 2003, the date on which he allegedly re-injured his back. R. 145. On October 28, 2004, the ALJ issued an unfavorable decision. R. 10-18. On November 11, 2004, Hester asked that the Appeals Council review the ALJ's decision. R. 7. He stated that he was in constant and severe pain and contended that a December 2003 MRI revealed objective symptoms to support his complaints of pain. He reported that he was scheduled for surgery on August 8, 2005 at Charity Hospital in New Orleans ("Charity"). R. 8. On March 11, 2005, the Appeals Council denied his request for review. R. 4-6.

Hester filed a complaint with this court on April 18, 2005. Rec. doc. 1. The Commissioner answered. Rec. doc. 6. A scheduling order was entered that required Hester to file a motion for summary judgment on September 1, 2005. Rec. doc. 3. Because of Hurricane Katrina, Hester was allowed an additional sixty days until December 3, 2005 to file his motion for summary judgment. Rec. doc. 8. Hester did not file a motion and did not seek additional time. More than thirty days has passed since the extended deadline. Hester is from Raceland, Louisiana. His counsel is from Cutoff, Louisiana. Neither Hester nor his attorney have notified the court that they are unable to proceed with the case because of the lingering effects of Hurricanes Katrina and Rita. Under the circumstances, Hester's request for relief from the final decision of the Commissioner will be taken under submission without the benefit of a motion for summary judgment from Hester.[1]

### STATEMENT OF ISSUE ON APPEAL

Since Hester did not file a motion for summary judgment, other than his complaint there is no pleading which describes the issues he intends to raise on appeal. In addition, Hester's attorney

---

[1] Hester has been represented by counsel throughout the proceedings before the ALJ and the court.

did not file a letter with the Appeals Council with a description of alleged errors in the ALJ's decision. The only guidance regarding Hester's complaints with the ALJ's decision is found in the request for review by the Appeals Council. In that document, Hester stated he was in constant and severe pain and he reported that surgery was scheduled for August 8, 2005. Hester's request for judicial review raises the issue of whether the ALJ erred in failing to find his testimony credible.

### THE ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. The claimant has not engaged in substantial gainful activity since July 29, 2003.

2. The medical evidence establishes that the claimant has "severe" L4-L5 diffuse disc bulge with right paracentral disc herniation/extrusion with neural foraminal stenosis and thecal sac deformity, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulation No. 4. Specific emphasis has been given to Listing 1.04, pertaining to disorders of the spine.

3. The claimant has alleged pain, and that he cannot work because of these symptoms. The credible medical evidence, however, does not establish an underlying medical condition so severe as to be productive of limitations that would preclude all work activity and the claimant's testimony is found credible only to the extent consistent with a residual functional capacity for a wide range of light work.

4. The claimant has the residual functional capacity to perform the physical exertional requirements of work except for lifting more than 20 pounds occasionally and 10 pounds frequently (20 CFR 416.945).

5. The claimant is unable to perform his past relevant work as a tacker.

6. The claimant has the residual functional capacity to perform the full range of light work (20 CFR 416.967).

7. The claimant is 47 years old, which is defined as a younger individual (20 CFR 416.963).

8. The claimant has a limited, seventh grade education (20 CFR 416.964).

9. The issue of transferability of work skills is not material because there is a significant number of unskilled jobs existing in the national economy that the claimant can perform.

10. Section 416.969 of Regulations No. 16 and Rule 202.18, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that the claimant, considering his residual functional capacity, age, education, and work experience, is not disabled.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision [20 CFR 416.920(f)].

R. 17-18.

## ANALYSIS

a. Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000); Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Newton, 209 F.3d at 452. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Id.; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence

exists to support it. <u>Villa</u>, 895 F.2d at 1022; <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for SSI, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. <u>Id</u>. §§ 404.1520, 416.920; <u>Newton v. Apfel</u>, 209 F.3d at 453; <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[2] The five-step inquiry terminates if the

---

[2] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. <u>Id.</u> §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. <u>Id</u>. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. <u>Id.</u> §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. <u>Id.</u> §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. <u>Id</u>. § 404,

Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Id.

    b.    <u>Testimony at hearing before ALJ</u>.

Hester had a seventh grade education. R. 144. He could read and write. R. 144. He read and understood the sports section of the newspaper. R. 158. He did not have a driver's license. R. 148. He had worked in shipyards. R. 144-45 and 150-51. He sustained a work related injury in 1992. R. 145. He re-injured himself in July 2003. R. 145. He was scheduled for neurosurgery in August 2005. R. 146. He did not know what would be done in the surgery. R. 157.

Hester had problems sleeping at night because pain caused him to get up and walk around. R. 147. He woke up about 8:00 a.m. each morning. R. 147. From his bed he went to a sofa or a

---

Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

chair. R. 147. He could sit for no more than ten minutes before he felt pain. R. 148. He did not do a lot of walking. R. 148. He did no chores in the house. R. 148. His mother and brothers helped him. R. 148. One of his brothers assisted him in and out of the shower. R. 148.

Hester experienced pain in his left side, both of his legs and his lower back. R. 154-55. He described it as an 8.5 on a scale of 10. R. 155. He experienced numbness in his feet, R. 154, and used a cane. R. 155. He had bladder problems. R. 155. He took Vicodin, Tylenol, and a muscle relaxer. R. 156. The medication made him drowsy. R. 156.

    c.    <u>Medical Evidence</u>.

On August 6, 2002, Hester was seen at Charity for complaints of right leg pain that was exacerbated by walking. He also experienced pain in his left leg. R. 78. He reported that he had a new job, but his leg just gave out on him. R. 79. Ibuprofen was prescribed. He was to return if his condition did not improve. R. 80.

On January 22, 2003, Hester returned to Charity with reporting of pain radiating down his right leg. R. 76. He denied taking any medication. His gait was steady. He reported a 1992 injury to his back. R. 76. On January 26, 2003, he was seen at Chabert Medical Center reporting low back pain that radiated down into his legs and an inability to continue working. R. 106. On July 7, 2003, he returned to Chabert with complaints of pain in his right side and leg. Ibuprofen was prescribed. R. 90. On August 6, 2003, he was seen at Chabert for complaints of leg pain. The diagnosis was low back pain and sciatica. R. 86. Soma and Vicodin were prescribed. R. 87. He was told to return to work within a week and to return to the emergency room if the pain became worse. R. 88. On September 17, 2003, he was seen at Chabert for complaints of low back pain that radiated into both legs. R. 82-83. The diagnosis was chronic low back pain. R. 84.

A December 3, 2003 MRI study of Hester's lumbar spine revealed a diffuse disc bulge at L4/5 with a right paracentral disc herniation/extrusion with neural foraminal stenosis and thecal sac deformity. There was no signal abnormality appreciated in the cord. There were narrow degenerative changes at L4/5 and L5/1. R. 123.

On December 29, 2003, Hester was seen at Chabert for complaints of low back pain and right leg pain. R. 131. On March 2, 2004, he was seen at Chabert for a follow-up appointment. He continued to have low back pain. R. 125. On May 7, 2004, use of a cane was prescribed. R.135.

On August 25, 2004, and at the request of the Commissioner, Hester was seen by Donald Faust, M.D., an orthopaedic surgeon. Hester reported that he first injured himself in 1992 with a second injury on July 30, 2003, when he jumped off of a twenty foot ladder. R. 139. He reported he needed a fusion and surgery was scheduled for 2005. Dr. Faust opined that Hester had disk degeneration of long-standing duration. There were inconsistencies in the examination that did not point to a specific surgical lesion that required intervention. R. 140. He recommended that Hester could be active and independent and perform the activities of daily living. R. 141.

Chabert referred Hester to Charity for a neurosurgery consult. R. 121. An appointment was scheduled for him at the LSU Neurosurgery clinic for August 1, 2005. R. 122. There is no indication in the medical records that he was scheduled for surgery at that time or thereafter. R. 122.

   d. Plaintiff's Appeal.

Issue. Did the ALJ err in failing to find Hester's testimony credible?

At the May 25, 2004 hearing, Hester described his every day pain as an 8.5 on a scale of 1 to 10. R. 155. He reported that he could sit for no more than ten minutes before he felt pain and that he did not do a lot of walking because of the pain. R. 148. He was unable to do any household

chores because of the pain. R. 148. At the conclusion of the hearing, the ALJ stated that he would order a consultative orthopedic examination. R. 159. On August 25, 2004, he was seen by Dr. Faust who recommended that Hester be active and perform the activities of daily living. R. 141. The ALJ concluded that:

> [Hester's] statements about his impairments and their impact on his ability to perform activities of daily living and basic functions are not entirely credible in light of discrepancies between the claimant's alleged symptoms and objective documentation in file. The physical findings and supporting clinical data do not closely corroborate or correlate with claimant's subjective complaints.

R. 16. The ALJ found that Hester exaggerated his symptoms and, to the extent they were inconsistent with the objective findings, they were not credible. R. 16.

The judgment as to the credibility of testimony at the hearing is the specific province of the ALJ and his evaluation of the severity of the subjective complaints is entitled to considerable judicial deference. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ, as fact-finder, has the duty to evaluate a claimant's credibility. Hollis v. Bowen, 837 F.2d 1378, 1384 (5th Cir. 1988). The ALJ found, based on the record, that Hester's description of his limitations was not credible. The Fifth Circuit has held that, in such a case, a reviewing court should not substitute its judgment for that of the Commissioner. See Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). The issue is whether there is substantial evidence in the medical record to support the ALJ's finding that Hester lacked credibility.

Hester reported that his initial injury was in 1992. The record contains no medical records for Hester's treatment prior to August 2002. He was seen at Charity in August, 2002 for complaints of right leg pain. Only Ibuprofen was prescribed. R. 79-80. In January, 2003 he went to both Charity and Chabert. R. 76 and 106. He returned to Chabert on July 7, 2003. R. 90. The second

injury was on July 29 or 30, 2003. R. 139 and 145. He was seen at Chabert on August 6 and September 17, 2003. R. 82-83 and 86. Soma and Vicodin were prescribed. R. 87. After the August visit he was told to return to work. R. 88. A December 3, 2003 MRI revealed degenerative changes and disc bulge at L4/5. R. 123. Hester was seen at Chabert in December, 2003 and March, 2004, R. 125 and 131, and a cane was prescribed in May, 2004. R. 135. Although an appointment with a Charity neurosurgeon was scheduled for August 1, 2005, there is no evidence in the medical records that Hester was scheduled to have surgery. R. 121-22. These medical records provide substantial evidence for the ALJ's finding that Hester exaggerated his symptoms. Although he described every day pain that reached 8.5 on a scale of 10, he only went to the doctor five times after the July 30, 2003 injury. Dr. Faust's examination on August 25, 2004 is also not consistent with Hester's complaints. Dr. Faust did not report any evidence of muscle weakness or atrophy. He recommended that Hester be active and independent and perform the activities of daily living. He concluded that surgery was not required. R. 140-41.

These medical records provide substantial evidence supporting the ALJ's determination. Hester's appeal is an attempt to have the court substitute its judgment regarding his credibility for that of the ALJ, which is not permitted. Brown, 192 F.3d at 496 (5th Cir. 1999).

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that Hester's request for from the Commissioner's decision denying his application for benefits be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 4th day of January, 2006.

_____
SALLY SHUSHAN
United States Magistrate Judge